**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**SOLVENTS AND PETROLEUM SERVICE,**
**INC.,** *doing business as* **"CLEAN ALL,"**

                                        **Plaintiff,**

                 **v.**                                          **5:21-CV-485**
                                                                 **(FJS/TWD)**

**CYBER SOLUTIONS INTEGRATION INC.,**


                                        **Defendant.**

---

**APPEARANCES**                          **OF COUNSEL**

**KOKOSA LAW FIRM, P.C.**                **MARC C. KOKOSA, ESQ.**
40 British American Boulevard, 2nd Floor
Latham, New York 12110
Attorneys for Plaintiff

**BOUSQUET HOLSTEIN PLLC**               **LAWRENCE M. ORDWAY, JR., ESQ.**
One Lincoln Center
110 West Fayette Street
Suite 1000
Syracuse, New York 13202
Attorneys for Defendant

**SILVERMAN THOMPSON SLUTKIN**           **JODIE E. BUCHMAN, ESQ.**
**& WHITE LLC**
201 North Charles Street
Suite 2600
Baltimore, Maryland 21201
Attorneys for Defendant


**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. BACKGROUND

Plaintiff is a solvents and chemical manufacturer that is incorporated in New York and has its principal place of business in Syracuse, New York. *See* Dkt. No. 13, Amended Compl., at ¶¶ 3, 7. In early March 2021, Defendant, allegedly a Florida corporation with its principal place of business in Florida, contacted Plaintiff seeking a quote for procuring large amounts of gel hand sanitizer.[1] *See id.* at ¶¶ 4-5, 12. Plaintiff alleges that Defendant had been awarded a small government contract to provide 336 cases of hand sanitizer to the Commonwealth of Virginia ("the customer"), which required delivery by March 3, 2021. *See id.* at ¶¶ 10-11. After weeks of negotiations, Plaintiff and Defendant agreed that Plaintiff would provide 336 cases (consisting of 13,440 units) of liquid sanitizer, instead of gel, at a rate of $1.47 per eight-ounce unit. *See id.* at ¶¶ 12-16.

Plaintiff alleges that, on March 16, 2021, the parties entered into a "teaming agreement," which was a consulting agreement for future government contracts, whereby Plaintiff would assist Defendant in drafting proposals for government contract awards involving hand sanitizer, and it set forth the procedure should Defendant request Plaintiff to fulfill a future government award as a subcontractor. *See id.* at ¶ 20. Plaintiff further alleges that the parties executed a separate contract the next day regarding the initial sale of the 336 cases of sanitizer and a total sale of 10,417 cases of sanitizer (125,000 units), when Plaintiff notified Defendant "of the sale conditions, how the first shipment would be labeled, and how the future shipments would be

---

[1] There is some dispute as to whether Defendant's principal place of business is in Florida or Virginia. However, the parties agree that Defendant is not a New York resident for jurisdictional purposes. *See* Dkt. No. 13 at ¶ 4; Dkt. No. 19-1, Def's Memorandum in Support, at 9, 17; Dkt. No. 19-2, Braxton Decl., at ¶ 3.

labeled." *See id.* at ¶¶ 26, 29-30.  The specifics of this agreement are allegedly contained in a purchase order and a series of emails that the parties attached to their memoranda.  *See* Dkt. No. 22-1.  Plaintiff then packaged and shipped the 336 cases to the customer, who ultimately rejected the order "for violating certain rules," including that the box was supposed to contain a Hazardous Materials warning, did not have lot coding or dating, the packages were allegedly not secure, some bottles were broken, and the liquid sanitizer "smelled like liquor."  *See* Dkt. No. 13 at ¶¶ 29-37.  Plaintiff claims that Defendant had not instructed it regarding the Hazardous Materials warning and the lot coding, that Defendant had approved the packaging, and that, "[u]pon information and belief, the shipment was further rejected because [Defendant] did not have authorization to provide liquid sanitizer, as opposed to the gel sanitizer, that was required[.]"  *See id.* at ¶¶ 34-36, 41.  Plaintiff also claims that the customer rejected the shipment because it did not receive it until after the March 3, 2021 delivery date in its contract with Defendant.  *See id.* at ¶ 40.

Defendant refused to pay Plaintiff for the sanitizer, and Plaintiff commenced this action alleging one cause of action for breach of contract with respect to 336 cases of sanitizer, as confirmed in the purchase order, and the total transaction of 125,000 units, *see* Dkt. No. 1, Original Compl., at ¶¶ 28-34, which it expanded upon in its amended complaint, *see* Dkt. No. 13 at ¶¶ 42-48.  In response, Defendant moved to dismiss Plaintiff's amended complaint for lack of personal jurisdiction and for failure to state a claim.  *See* Dkt. No. 19.[2]

---

[2] Defendant also moved to dismiss Plaintiff's original complaint on the same grounds.  *See* Dkt. No. 6.  The Court denies that motion as moot and only considers the merits of Defendant's second motion as it is directed at Plaintiff's amended complaint.  *See* Dkt. No. 19.

## II. DISCUSSION

### A. Legal standards

#### 1. *Personal jurisdiction*

Courts may dismiss a complaint pursuant to Rule 12(b)(2) if a plaintiff fails to make a "prima facie showing of jurisdiction through its own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *see also Harris v. Ware*, No. 04CV1120 (JG), 2005 U.S. Dist. LEXIS 3302, *4 (E.D.N.Y. Mar. 4, 2005) (quotation omitted). "In other words, prior to discovery, a plaintiff may defeat [a motion to dismiss for lack of personal jurisdiction] 'by pleading, in good faith, *see* Fed. R. Civ. Proc. 11, legally sufficient allegations of jurisdiction.'" *Harris*, 2005 U.S. Dist. LEXIS 3302, at *4 (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (quotation marks omitted)). The Court must construe the pleadings and submissions in the light most favorable to the plaintiff, and the Court must resolve all doubts in its favor. *See S. New Eng. Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina*, 521 F.3d at 126).

#### 2. *Failure to state a claim*

A motion to dismiss pursuant to Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544], 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [(2007)]). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] …" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  When making its decision, this court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235 (2d Cir. 2008) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam)).

**B.  Whether the Court has personal jurisdiction over Defendant**

When a defendant moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, district courts must perform a two-part analysis.  *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  First, the court "must determine whether there is [personal] jurisdiction over the defendant under the relevant forum state's laws[.] …" *Id.*  Second, the court "must determine whether an exercise of [personal] jurisdiction under these laws is consistent with federal due process requirements." *Id.* (citation omitted).  The Court addresses each of these issues in turn.

**1.  New York's long-arm statute**

New York's long-arm statute lists the scenarios in which a New York court may exercise specific personal jurisdiction over a non-domiciliary.  *See* N.Y. C.P.L.R. § 302.  In this case, the

parties dispute whether the Court can exercise jurisdiction over Defendant pursuant to Section

302(a)(1).  That section provides the following, in relevant part:

> (a) As to a cause of action arising from any of the acts enumerated in this
>      section, a court may exercise personal jurisdiction over any non-
>      domiciliary, or his executor or administrator, who in person or
>      through an agent:
>
>> (1) transacts any business within the state or contracts anywhere
>>      to supply goods or services in the state[.]

*See id.* at § 302(a)(1).

"In assessing whether a defendant has 'transacted business,' [the] [c]ourt looks to 'the

totality of the defendant's activities within the forum.'"  *Cont'l Indus. Grp. v. Equate*

*Petrochemical Co.*, 586 F. App'x 768, 770 (2d Cir. 2014) (summary order) (quoting *Best Van*

*Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted)).

"'New York courts define transacting business as purposeful activity – some act by which the

defendant purposefully avails itself of the privilege of conducting activities within the forum

State.'"  *Id.* (quotation omitted).  "Several factors should be considered in determining whether

an out-of-state defendant transacts business in New York, including:

> '(i) whether the defendant has an on-going contractual relationship
> with a New York corporation; (ii) whether the contract was
> negotiated or executed in New York and whether, after executing
> a contract with a New York business, the defendant has visited
> New York for the purpose of meeting with parties to the contract
> regarding the relationship; (iii) what the choice-of-law clause is in
> any such contract; and (iv) whether the contract requires
> franchisees to send notices and payments into the forum state or
> subjects them to supervision by the corporation in the forum
> state.'"

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car*
*Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted)).

The parties do not dispute the fact that Defendant never physically entered New York and negotiated with Plaintiff via electronic means, but that does not preclude the Court from having personal jurisdiction over it.  As one New York court put it, although "electronic communications, telephone calls or letters, in and of themselves, are generally not enough to establish jurisdiction . . . they may be sufficient if used by the defendant deliberately to project itself into business transactions occurring within New York State[.]" *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 21 A.D.3d 90, 94 (1st Dep't 2005) (citations omitted); *accord Weintraub v. Empress Travel Trevose*, No. 17 Civ. 00552 (PGG), 2018 U.S. Dist. LEXIS 239429, *23-*24 (S.D.N.Y. Mar. 6, 2018).  Courts have found that the quality of the contacts with New York is more important than the quantity.  *See Weintraub*, 2018 U.S. Dist. LEXIS 239429, at *24 (quotation and other citation omitted).  "While a single phone call may suffice to establish jurisdiction under appropriate circumstances, the communications at issue must demonstrate that the defendant 'intend[ed] to do business in New York' – such that the transaction had New York as its 'center of gravity.'" *Id.* (citations omitted).

With respect to the first transacting business factor, whether Defendant had an ongoing contractual relationship with a New York corporation, Plaintiff alleges that Defendant first contacted it in early-March 2021 and their negotiations began on March 8, 2021, and "last[ed] weeks." *See* Dkt. No. 13 at ¶¶ 12, 16.  Plaintiff further alleges that, on March 16, 2021, the parties "entered into a separate 'teaming agreement' (Contract # 1) applicable only to future government contract awards." *See id.* at ¶ 20.  Plaintiff then contends that the parties contracted "for the sale of 125,000 units of hand sanitizer (contract #2) . . . on March 17, 2021[.]" *See id.* at ¶ 26.  Plaintiff believed that its shipment of 336 cases of sanitizer was "the first delivery of what was intended by the contract to ultimately be 10,417 cases [125,000 units] of sanitizer,

over the course of one year, to the address provided by [Defendant]."  *See id.* at ¶ 29; Dkt. No. 22-1, Ex. 1, at 18-20.  Although the parties' actual negotiations and agreement lasted approximately one month, Plaintiff has plausibly alleged that there were plans for future shipments as part of the contract that would last up to one year, which would show that the parties had an "ongoing contractual relationship."  Thus, the Court finds that the first factor weighs in favor of finding personal jurisdiction over Defendant.

As to the second factor, whether the contract was negotiated or executed in New York, the parties do not dispute that they negotiated the agreement electronically, with Plaintiff being in New York and Defendant being outside of the state.  *See* Dkt. No. 19-1 at 11, 19; Dkt. No. 23 at 18, 22; Dkt. No. 22-1.  However, Plaintiff contends that it drafted the terms of the contract, to which Defendant agreed, in New York.  *See* Dkt. No. 13 at ¶ 18.  Plaintiff also alleges that it executed the contract in New York because it manufactured the sanitizer in New York using raw materials from this state.  *See id.* at ¶¶ 18-19.  Additionally, Plaintiff packaged the order in New York and shipped it from New York.  *See id.* at ¶¶ 26-29.  Although there is no evidence, nor are there any allegations that, after execution, Defendants visited New York with the purpose of meeting Plaintiff or furthering their contractual relationship, the Court nonetheless finds – based on the negotiations and execution of the contract in New York – that the second factor also weighs in favor of concluding that the Court has personal jurisdiction over Defendant.

Third, regarding the choice-of-law provision, Virginia law governs the teaming agreement.  *See* Dkt. No. 19-7, Ex. E, at ¶ 23.  The purchase order and emails that allegedly constitute a separate agreement – what Plaintiff describes as "Contract #2" – does not contain a choice-of-law provision.  *See generally* Dkt. No. 19-8, Ex. F.  The teaming agreement's choice-

- 8 -

of-law provision weighs against finding jurisdiction over Defendant; however, as discussed more fully below, the Court is skeptical as to whether the teaming agreement is applicable in this case.  With respect to Contract # 2, the absence of a choice-of-law provision is neutral. Notably, the purchase order encompassed in Contract #2 also requires that Defendant send payment to Plaintiff in the forum state, which supports finding that the Court has jurisdiction over Defendant.  *See id.*

Finally, as is addressed in the second factor, it appears that the parties agreed that Defendant contacted Plaintiff regarding services *to be performed in New York*.  Plaintiff sourced the raw materials for the sanitizer in this state, manufactured it here, packaged it, and shipped it from New York to the contracted destination in Virginia.  Thus, in weighing each of the relevant factors and considering that the bulk of the agreement between the parties was to be performed in New York, the Court finds that Defendant's conduct constituted "transacting business" in New York sufficient to trigger Section 302(a)(1) of the long-arm statute; and, thus, Defendant is subject to personal jurisdiction under New York law.

### 2.  *Due process*

Even if Defendant is subject to personal jurisdiction in New York under the state's long-arm statute, the Court cannot exercise personal jurisdiction over Defendant if doing so would violate the Due Process Clause of the United States Constitution.  The Supreme Court has held that a state may constitutionally exercise jurisdiction over non-domiciliary defendants as long as they had "minimum contacts" with the forum state such that the maintenance of the suit would not offend "'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. State of Wash.,* 326 U.S. 310, 316 (1945) (quoting *Miliken v, Meyer*, 311 U.S. 457, 463) (other citations omitted).

To establish the minimum contacts necessary to establish personal jurisdiction over the non-domiciliary defendant, the plaintiff must show the following: (1) that his claim arises out of or relates to the non-domiciliary defendant's activities within the forum state, *see Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984), and (2) that the defendant's conduct and connection with the forum state are such that it should reasonably foresee being "haled into court" there, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).  A non-domiciliary defendant has "minimum contacts" with the forum State – and thus may reasonably foresee being haled into court there – if it "'purposefully avails itself of the privilege of conducting activities within the forum State.[.]" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. [235,] 253 [(1958)]).

To determine whether jurisdiction would offend traditional notions of fair play and substantial justice, the Supreme Court set out a list of considerations in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).  The Supreme Court indicated that trial courts should evaluate the following factors: "[(1)] 'the burden on the defendant,' [(2)] 'the forum State's interest in adjudicating the dispute,' [(3)] 'the plaintiff's interest in obtaining convenient and effective relief,' [(4)] 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and [(5)] 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King Corp.*, 471 U.S. at 477 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S., at 292).

The parties' emails reveal that, in March 2021, one of Defendant's employees emailed Plaintiff seeking a quote on the cost per bottle of 125,000 eight-ounce bottles of gel hand sanitizer containing at least 70% alcohol.  *See* Dkt. No. 22-1 at 2.  Defendant continued to email back and forth with Plaintiff regarding the price, details of the sanitizer's ingredients and

effectiveness, packaging, and shipping specifications. *See id.* at 2-8. It is apparent from the emails that Plaintiff is located in Syracuse, New York, as its address is listed at the bottom of each email, and the email domain is "cleanallcny," indicating Plaintiff's location in Central New York. *See generally id.* The teaming agreement between the parties also lists Plaintiff's address as located in New York. *See* Dkt. No. 22-2 at 2. In addition to Defendant being aware that Plaintiff was located in this state, and as discussed with respect to New York's long-arm statute, Plaintiff alleges in its amended complaint that it executed the contract in New York when it sourced the materials for the sanitizer, manufactured the sanitizer, packaged it, and shipped it from New York. *See* Dkt. No. 13 at ¶¶ 18, 19, 26. Based on each of these alleged facts, the Court finds that Defendant could have reasonably foreseen being haled into court in New York after it purposefully availed itself of the laws of the state when it knowingly contracted with a New York company for products that were sourced, made, packaged, and shipped from New York. As such, the Court finds that Defendant has sufficient minimum contacts with New York for the Court to exercise personal jurisdiction over it.

Lastly, in considering whether exercising personal jurisdiction over Defendant would violate traditional notions of fair play and substantial justice, the Court first looks at Defendant's burden in litigating this case in New York. Although Defendant's business is located in either Virginia or Florida, it does not appear that it would be inordinately difficult for its employees to travel to New York for court proceedings. In fact, in the era of teleconferences and virtual depositions, Defendants' employees likely would only have to come to New York for trial. Additionally, Defendant has already obtained New York-based counsel. There also has not appeared to be any issue with obtaining discovery as the parties have already attached numerous

electronic documents, such as emails, the teaming agreement, and the purchase order to their memoranda.

With respect to the second *Burger King* factor, "'New York has an interest in adjudicating the claims of its plaintiff corporate citizens[.]'"  *Pearson Educ., Inc. v. Kumar*, 721 F. Supp. 2d 166, 184 (D. Conn. 2010) (quoting [*John*] *Wiley & Sons, Inc.* [*v. Treeakarabenjakul*, No. 09 Civ. 2108 (CM)], 2009 U.S. Dist. LEXIS 52819, [*21], 2009 WL 1766003, at *8 [(S.D.N.Y. June 18, 2009)] (citations omitted)); *see also USHA Holdings, LLC v. Franchise India Holdings, Ltd.*, 11 F. Supp. 3d 244, 273 (E.D.N.Y. 2014) (finding that New York "has a significant interest 'in providing effective means of redress' for plaintiffs, who are residents of New York [S]tate" (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957))).  Likewise, regarding the third factor, since Plaintiff is a New York corporation with its principal place of business in Syracuse, New York, and its employees and manufacturing facility are located in New York, Plaintiff clearly has an interest in obtaining effective and convenient relief in New York.  Finally, the last two factors are neutral. Considering all of the above, the Court finds that exercising jurisdiction over Defendant would not violate traditional notions of fair play or substantial justice under the Due Process Clause.

Accordingly, the Court finds that it may exercise personal jurisdiction over Defendant. As such, the Court denies Defendant's motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### C. Whether Plaintiff's amended complaint adequately states a claim for breach of contract

Defendant argues that Plaintiff incorrectly claims that there are two contracts – the teaming agreement and a separate contract to purchase 125,000 units of sanitizer – and that

Plaintiff relies on "contract #2" to support its cause of action for breach of contract.  *See* Dkt. No. 19-1 at 23.  However, according to Defendant, "[t]he unambiguous terms and conditions of the underlying documents . . . do not support Plaintiff's theory and instead mandate dismissal of Plaintiff's case against [Defendant]."  *See id.*  For example, Defendant points out that, even if the parties discussed over email whether Plaintiff had the capability and capacity to service the customer's needs, those communications "merged into and are superseded by" the teaming agreement.  *See id.*  Additionally, Defendant asserts that the teaming agreement does not afford Plaintiff any claim for relief against it for the customer's rejection of the product and specifies that, if the customer rejected the product for any reason, Plaintiff "shall bear its own cost and expenses."  *See id.* at 24, 26 (quoting Dkt. No. 19-7 at § 4).

According to Plaintiff, it alleged in its complaint that Defendant breached a second and different contract from the teaming agreement, which "was formulated and agreed upon through written correspondence between the parties[.]"  *See* Dkt. No. 23 at 24.  Plaintiff argues that the issues are clear in that (1) the teaming agreement is not the contract about which it complained because the teaming agreement does not have authority over the contract for the sale of 125,000 units of hand sanitizer, and (2) even if it did, the teaming agreement's express terms invite this litigation.  *See id.*  More specifically, Plaintiff contends that the teaming agreement shows that it is an agreement for Plaintiff to provide information and consulting services to Defendant, which did not encompass the 125,000-unit order.  *See id.*  However, even if the teaming agreement encompassed that order, Plaintiff contends that the teaming agreement would only apply to orders for which Defendant had not yet won procurement bids.  *See id.*

Relying on the teaming agreement's choice-of-law provision, Defendant contends that Virginia law applies.  Under either New York or Virginia law, "'[t]o establish the existence of

- 13 -

an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound[.]'" *Grasso v. Donnelly-Schoffstall*, No. 1:20-CV-521 (LEK/DJS), 2021 U.S. Dist. LEXIS 61549, *4-*5 (N.D.N.Y. Mar. 31, 2021) (Kahn, S.J.) (quoting *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43 (N.Y. App. Div. 1st Dep't 2009)); *see also Dean v. Morris*, 287 Va. 531, 536 (Va. 2014) (quotation omitted). To state a claim for breach of such contract, "'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)); *see also MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 461 (Va. 2017) (quotation omitted).

The parties dispute whether there are one or two contracts in this action and, therefore, which terms govern the parties' transaction in shipping 336 cases of hand sanitizer to Defendant's customer. As stated above, at the motion to dismiss stage, the Court "'must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009) (internal quotation marks omitted)). Plaintiff alleges in its complaint that the parties entered into the teaming agreement on March 16, 2021, which "was a consulting agreement whereby [Plaintiff] would assist [Defendant] in drafting proposals for government contract awards involving hand sanitizer, and identified the payment procedure should [Plaintiff] be requested to fulfill a future government award." *See* Dkt. No. 13 at ¶¶ 20-21.

- 14 -

Although Defendant argues that the teaming agreement is the only contract between the parties and governs this issue, Plaintiff alleges otherwise in its complaint.  Plaintiff asserts that the parties entered into a second, legally binding and valid contract on March 17, 2021, for Plaintiff to manufacture 125,000 units of liquid hand sanitizer, on Defendant's behalf, at a cost of $1.47 per unit.  *See id.* at ¶¶ 26, 43.  Plaintiff contends that it executed that contract when it notified Defendant of the sale conditions, how the first shipment would be labeled, and how the future shipments would be labeled, and Defendant agreed to the terms in writing.  *See id.* at ¶¶ 26-27.  Plaintiff alleges that, in compliance with this contract, it packaged the first batch of hand sanitizer in the uniquely sized bottles and boxes that Defendant required and shipped the product to Defendant's customer.  *See id.* at ¶ 29.  Plaintiff further alleges that Defendant breached the contract because it refused to pay Plaintiff and because it refused further shipments from Plaintiff.  *See id.* at ¶¶ 45-46.  In its complaint, Plaintiff asserted that full performance of the contract would have generated it a gross profit of $183,750 and a net profit of $82,500.  *See id.* at ¶¶ 47-48.  Plaintiff therefore requests either $82,500 in actual damages or an order directing specific performance wherein Plaintiff would manufacture and ship the remaining 111,560 units of sanitizer and Defendant would compensate Plaintiff accordingly. *See id.* (Prayer for Relief).

The parties' emails and the March 17, 2021 purchase order are incorporated by reference into Plaintiff's complaint, and Plaintiff submitted them along with its memorandum of law.  *See* Dkt. No. 22-1.  In those emails, Defendant asked Plaintiff for a quoted price to produce and ship 125,000 eight-ounce units of gel hand sanitizer.  *See id.* at 2-3.  Plaintiff explained that it could make liquid hand sanitizer, but not gel, which Defendant appeared to state was acceptable.  *See id.* at 3-4.  Plaintiff stated that the price per unit for 125,000 units would be $1.47 and it could

"lock in that price for 1 year," as long as it had a "one year commitment in writing[.]"  *See id.* at

6.  The parties also discussed packaging, labeling, and shipping the products.  *See id.* at 5-8, 11-

12, 14.  Finally, in the purchase order confirmation, Plaintiff confirmed that it was shipping 336

cases of sanitizer with 40 units per case.  *See id.* at 14.  Based on the foregoing, the Court finds

that Plaintiff has plausibly stated that these emails, combined with the purchase order,

constituted a contract for the production and sale of 125,000 eight-ounce units of sanitizer.[3]

Furthermore, the Court finds that, when looking at the terms of this contract in the light most

favorable to Plaintiff, Plaintiff has plausibly stated that Defendant breached the contract by

refusing to pay for the 336 cases of shipped sanitizer and to receive delivery of the other 10,081

cases.  As such, the Court denies Defendant's motion to dismiss Plaintiff's amended complaint

for failure to state a claim.


### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motions to dismiss Plaintiff's complaint and amended

complaint, *see* Dkt. Nos. 6, 19, are **DENIED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Dancks for all further pretrial

matters.

**IT IS SO ORDERED.**

Dated:  March 16, 2022
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge

---

[3] Whether these documents, in fact, constitute a contract is a dispute that the Court need not decide at this juncture.